[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for assault first degree, in violation of General Statutes § 53a-59(a)(3), upon which judgment the petitioner received a sentence of nineteen years incarceration.
In the second count of his amended petition, the petitioner claims that his confinement is unlawful in that newly discovered evidence demonstrates that he is actually innocent of the assault charge. The first count, alleging ineffective assistance of counsel, was withdrawn previously.
 I
The petitioner makes no claim that his conviction and confinement result from any constitutional flaw which occurred at his criminal trial or sentencing. He contends that newly discovered evidence entitles him to habeas corpus relief in the way of a new trial. Initially, the court must determine the legal standard which applies in assessing such a claim.
Our Supreme Court has recently held that a habeas petitioner's claim of actual innocence may establish the grounds for ordering a new trial despite the absence of a constitutional violation at the criminal trial, Summerville v. Warden, 229 Conn. 397,421 (1994). The Supreme Court declined to specify the legal standard which must be satisfied by a petitioner making such a claim, however, Id, 432 and 433. That Court did discuss the variety of standards which have been applied in other CT Page 8652 jurisdictions to such claims, viz. "the most compelling evidence of actual innocence; a truly persuasive demonstration of actual innocence; an extraordinarily high and truly persuasive demonstration of actual innocence; evidence on which no rational trier of fact could find proof of guilt beyond a reasonable doubt; or evidence that casts fundamental doubt on the accuracy and reliability or the original verdict, and that, if credited, undermines the entire prosecution case and points unerringly to innocence," Id, 439. The Supreme Court also opined that some other high standard might apply, such as "clear and convincing evidence," Id, fn. 22.
In resolving this issue, the court decides that the proper legal standard applicable to such a claim is the standard set forth by Justice White in his concurring opinion in Herrera v.Collins, ___ U.S. ___; 1135 S.Ct. 853 (1993). That standard requires a habeas petitioner "to show that based on proffered newly discovered evidence and the entire record before the jury that convicted him, no rational trier of fact could find proof of guilt beyond a reasonable doubt," Id, 875. This standard mandates as a threshold determination, that the habeas court combine the proffered new evidence with that presented at the criminal trial and assess whether this combination of evidence is such that no reasonable jury could find the petitioner guilty. Only if the combined evidence results in such an assessment need the habeas court hear and evaluate the credibility of such evidence at the habeas hearing to determine whether a new trial is warranted.
The court feels that this standard is best suited for claims of actual innocence for the following reasons. It is the least vague of all the standards so far proposed. It is, therefore, the least subjective in application. Both the petitioner and respondent must clearly know what is expected by way of proof. Rather than trying to interpret more amorphous phrases such as "most compelling," "truly persuasive," "extraordinarily high," "fundamental doubt," and "points unerringly," the habeas court will have a more practical and familiar guide for analyzing such claims. This standard is familiar because it is similar to the standard applicable to deciding motions for judgment of acquittal. On appeal, a reviewing court will be in a better position to scrutinize the habeas court's decision because of the clarity of this standard. Finally, this standard strikes a fair balance between the sometimes countervailing forces of the necessity for; finality and the accommodations necessary to avoid incarceration of the innocent. CT Page 8653
The petitioner, however, contends that the United States Supreme Court has, after Summerville v. Warden, supra, was decided by our state Supreme Court, altered the legal standard for habeas review from that discussed in Herrera v. Collins,
supra. The petitioner cites the recent case of Schlup v. Delo,
___ U.S. ___ (1995), in support of this contention. The court holds that Schlup v. Delo, supra, is inapplicable to claims of actual innocence where no constitutional error exists undermining the validity of the underlying criminal trial and that the vitality of Herrera v. Collins, supra, remains intact.
The majority in Schlup v. Delo, supra, in section III of its opinion, expressly limited the purview of its holding to cases where the habeas petitioner is asserting serious, constitutional violations in the conduct of his criminal trial. In Schlup v.Delo, supra, the petitioner contended that his conviction resulted from ineffective assistance of his trial counsel and prosecutorial misconduct. The majority explicitly distinguished the facts and claims in Schlup v. Delo, supra, from the situation where actual innocence is claimed despite the absence of error at trial. The majority recognized that the holding in Herrera v.Collins, supra, still controls in the "error-free" situation.
Consequently, the court holds that the legal analysis described in Justice White's concurring opinion in Herrera v.Collins, remains the correct standard for analyzing the present case.
 II
Applying that legal standard, the court finds that the petitioner has failed to meet the high burden set by that standard. The victim, Nigel Lowndes, testified at the petitioner's criminal trial that while he attended an "after-hours" club with some friends he was jostled by the petitioner. Lowndes knew the petitioner previously. The bumping incident precipitated an oral exchange which escalated into a shoving match between the victim and the petitioner. The petitioner then produced a pistol, jammed it into the victim's abdomen, and threatened to shoot the victim. While a third party attempted to calm the petitioner, the petitioner placed the pistol against the victim's face and fired, causing life-threatening injury to the victim.
A friend of the victim, Tanya Phillips, witnessed the CT Page 8654 incident and also testified at the petitioner's criminal trial. She stated that she observed the verbal argument turn into a fist fight. She saw the victim collapse suddenly to the floor, saw the petitioner standing close to the prostrate victim, and saw the petitioner holding a pistol in his hand. The petitioner then hurriedly left the scene with a female companion.
Medical evidence was adduced at the criminal trial from a member of the trauma team which had administered emergency treatment to the victim. The medical evidence substantiated that the victim had suffered a gunshot wound to the face and head.
Catherine Hammie, who was the petitioner's companion at the after-hours club, also testified at his criminal trial. She failed to see who first produced the weapon or fired it.
The petitioner also testified in his own defense at his criminal trial. He related that the victim produced the pistol and was shot when the gun accidentally discharged during the scuffle between the parties.
The newly discovered evidence consists of the testimony of two witnesses absent from the criminal trial. Roger Woodson and Stanley Thompson testified at the habeas hearing that they saw the victim first produce the weapon, corroborating the petitioner's version of events. Both Woodson and Thompson are convicted felons presently serving prison sentences.
The legal standard described above requires the habeas court to combine the proffered, new evidence of Woodson and Thompson with that produced at the petitioner's criminal trial and then evaluate whether this combination of evidence is such that no reasonable jury could find the petitioner guilty of the charge beyond a reasonable doubt. This is an extraordinarily high burden for the petitioner to meet. The court finds that, despite the corroborative testimony of Woodson and Thompson, a reasonable jury could still lawfully and reasonably determine that the testimony of the victim and Phillips was credible and accurate. Credibility is for the trier-of-fact to determine. Merely because a greater number of witnesses testify as to a particular version of facts does not make that version binding on the trier-of-fact.Emhart Industries, Inc. v. Amalgamated Local Union 376, 190 Conn. 371,404 (1983). The ascertainment of truth from conflicting testimony is the primary function of a jury, and this task arises in nearly every contested case. A jury could believe the victim CT Page 8655 and Phillips and be reasonable in doing so. The testimony of the victim and Phillips is sufficient to establish the petitioner's guilt beyond a reasonable doubt. Thus, the petitioner has failed to prove that no reasonable jury could have convicted him after considering the additional testimony of Woods and Thompson.
For these reasons, the petition is dismissed.
Sferrazza, J.